UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| KENYA LENEE SINCLAIR,<br><br>Plaintiff,<br><br>v.<br><br>GUSTAVO CULBEAUX, *in his individual and official capacities*, MINNESOTA STATE PATROL, and STATE OF MINNESOTA,<br><br>Defendants. | Case No. 25-cv-2365 (LMP/ECW)<br><br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

Kenya Lenee Sinclair, pro se.

Christy L. Hall and Janine Wetzel Kimble, **Minnesota Attorney General's Office, St. Paul, MN**, for Defendants Gustavo Culbeaux, Minnesota State Patrol, and the State of Minnesota.

Plaintiff Kenya Lenee Sinclair ("Sinclair") brought this action against Defendants Gustavo Culbeaux ("Trooper Culbeaux"), the Minnesota State Patrol, and the State of Minnesota, asserting claims under Section 1983, the Americans with Disabilities Act ("ADA"), and Minnesota common law. *See* ECF No. 1 at 2. Defendants move to dismiss. ECF No. 17. For the following reasons, Defendants' motion is granted.

## BACKGROUND

Sinclair's complaint relates to a traffic stop that occurred on November 1, 2024. ECF No. 1 at 1. At 8:48 p.m., Trooper Culbeaux observed a vehicle speeding on Interstate

1

35W and attempted to perform a traffic stop. Sealed Ex. B at 1:55.[1] Despite Trooper Culbeaux activating his emergency lights at 8:49 p.m., the vehicle did not pull over. *Id.* at 1:55–3:50. Trooper Culbeaux continued to follow the vehicle on Interstate 35W and an exit ramp for another two minutes, at which point Trooper Culbeaux initiated a PIT maneuver.[2] *Id.* at 3:50. Trooper Culbeaux's squad car bumped the vehicle on its right passenger side behind the rear tire, leading the vehicle to spin briefly but eventually straighten out. *Id.* at 3:50–3:55. The vehicle continued driving, but Trooper Culbeaux's squad car bumped the vehicle a second time, which boxed in the vehicle and allowed it to come to a stop without hitting any retaining walls, barriers, or other vehicles.[3] *Id.* at 3:57.

After the vehicle came to a stop at 8:52 p.m., Sinclair exited the vehicle. Sealed Ex. A at 4:07. Trooper Culbeaux directed Sinclair to remain near the vehicle and asked her to turn around so he could put handcuffs on her. *Id.* at 4:06. Sinclair did not comply,

---

[1] In addition to the complaint's allegations, the Court also considers the squad car and body camera video provided by Defendants, as those videos are "necessarily embraced by the pleadings" and may be considered on a motion to dismiss. *Ching ex rel. Jordan v. City of Minneapolis*, 73 F.4th 617, 621 (8th Cir. 2023).

[2] "PIT" refers to a Pursuit Intervention Technique, a maneuver designed to cause a fleeing vehicle to spin to a stop. *See Scott v. Harris*, 550 U.S. 372, 375 (2007).

[3] Sinclair alleges in her complaint that Trooper Culbeaux struck her vehicle "despite [her] stopping and complying." ECF No. 1 at 1. The squad video demonstrates, however, that Trooper Culbeaux struck Sinclair's vehicle only after she continued to drive for two minutes after he activated his emergency lights. *See* Sealed Ex. B at 1:55–3:50. The Court need not accept as true Sinclair's allegation that Trooper Culbeaux struck her vehicle without cause, given that the allegation is squarely contradicted by the squad car video. *See Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019) (citation omitted) (explaining that courts assessing motions to dismiss need not "adopt the plaintiff's version of the facts if they are blatantly contradicted by video evidence" (cleaned up)).

yelling "You don't have the right to touch me. What is your nationality?" *Id.* at 4:18–4:22. Trooper Culbeaux responded that his nationality did not matter and again asked Sinclair to turn around so that he could handcuff her. *Id.* at 4:21–4:25. She refused again, stating that her daughter was in danger and that Trooper Culbeaux did not have "jurisdiction" over her. *Id.* at 4:25–5:11. Trooper Culbeaux held Sinclair by the wrists next to the vehicle until another State Patrol trooper arrived at 8:53 p.m., at which point Sinclair was handcuffed. *Id.* at 4:25–6:05.

Before being handcuffed, Sinclair informed Trooper Culbeaux that her grandson was in the backseat of her vehicle. *Id.* at 4:43–4:50. Trooper Culbeaux stated that he would have medics check on her grandson. *Id.* at 4:50–4:53. At 8:58 p.m., a State Patrol trooper retrieved the child from Sinclair's vehicle, and troopers watched the child until 9:06 p.m. when medics arrived and evaluated the child. Sealed Ex. C at 7:33–7:45, 14:43–18:30, 23:37–25:58, 26:57–28:58.

While the troopers were looking after Sinclair's grandchild, Sinclair was handcuffed and seated in the backseat of Trooper Culbeaux's squad car. Sealed Ex. A at 7:10–7:20. Sinclair told Trooper Culbeaux, "Officer, officer, officer, officer, these handcuffs are too tight. I've got disabilities." *Id.* at 8:45–8:58. Sinclair alleges that she suffers from a missing left thumb, surgical damage to her left arm and back, post-traumatic stress disorder, anxiety, and depression. ECF No. 1 at 2. Before Trooper Culbeaux could respond, Sinclair began shouting, demanding to be reunited with her grandchild and requesting that troopers check on Sinclair's daughter, whom she asserted was in danger. Sealed Ex. A at 8:58–9:30. At 9:16 p.m., Trooper Culbeaux contacted Sinclair's daughter (who is also the child's

3

mother), and she agreed to come to the scene to pick up her child. Sealed Ex. A at 28:17–29:00. Sinclair's daughter arrived at the scene at 9:21 p.m. and took custody of her child.[4] Sealed Ex. C at 30:40–36:20. Sinclair's daughter stated that she was not in danger, despite Sinclair's belief to the contrary. *Id.* at 31:02–31:20.

Trooper Culbeaux then transported Sinclair to the county jail at 9:21 p.m. *Id.* at 33:38. In the squad car on the way to the county jail, Sinclair complained about the tight handcuffs and explained that her "thumb [was] shot off" and that she had surgery on her arm. *Id.* at 33:57–34:00, 44:40–44:58. After arriving at the county jail at 9:36 p.m., Sinclair asked Trooper Culbeaux to remove the handcuffs because her hands were hurting. *Id.* at 52:05–52:55. After confirming that Sinclair would not resist, Trooper Culbeaux removed Sinclair's handcuffs. *Id.*

On June 6, 2025, Sinclair brought this action against Trooper Culbeaux, the Minnesota State Patrol, and the State of Minnesota, alleging: (1) a Section 1983 claim for a Fourth Amendment violation, alleging that Trooper Culbeaux's use of force was objectively unreasonable; (2) a Section 1983 claim for a Fourteenth Amendment due process violation, alleging that Sinclair's "parental interest and right to family integrity" was violated by the traffic stop; (3) a claim under the ADA for failing to provide reasonable accommodations; (4) a state-law battery claim; (5) a state-law negligence claim; and (6) a state-law intentional infliction of emotional distress claim. ECF No. 1 at 1–2. Sinclair

---

[4] Sinclair alleges in her complaint that troopers "refused to help notify" the child's mother "or ensure the child's welfare and safety." ECF No. 1 at 2. Because these allegations are refuted by the body cam footage, the Court disregards them. *Waters*, 921 F.3d at 734.

4

seeks damages, "[i]njunctive relief against Minnesota State Patrol practices," and declaratory relief. *Id.* at 3. Defendants move to dismiss the complaint in its entirety. ECF No. 17. Sinclair responded in opposition and provided exhibits. ECF Nos. 25, 26.

## ANALYSIS

Defendants seek dismissal under both Federal Rule of Civil Procedure 12(b)(1) and Federal Rule of Civil Procedure 12(b)(6). A defendant may raise either a "facial" or a "factual" challenge to a court's subject-matter jurisdiction under Rule 12(b)(1). *Scott v. UnitedHealth Grp., Inc.*, 540 F. Supp. 3d 857, 861 (D. Minn. 2021). On a facial challenge "the court restricts itself to the face of the pleadings" and "the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). By contrast, "[i]n a factual attack, the court considers matters outside the pleadings." *Id.* Because Defendants rely on the pleadings and matters embraced by the pleadings (which may be considered on a motion to dismiss), Defendants raise a facial attack to the Court's subject-matter jurisdiction. Accordingly, the Court will limit its review to the pleadings and relevant public records and will "defer to the non-moving party's factual allegations" when they are not contradicted by the squad and body cam video. *Qwest Commc'ns Co. v. Free Conferencing*, 990 F. Supp. 2d 953, 965 (D. Minn. 2014).

In reviewing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). The complaint must "state a

5

claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Sinclair is proceeding pro se, the Court is mindful to liberally construe her filings. *See Lamar v. Payne*, 111 F.4th 902, 907 n.2 (8th Cir. 2024).

**I.    Sovereign Immunity Bars Claims Against the Minnesota State Patrol, the State of Minnesota, and Trooper Culbeaux in His Official Capacity**

Defendants first argue that the claims against the Minnesota State Patrol, the State of Minnesota, and claims for damages against Trooper Culbeaux in his official capacity are barred by sovereign immunity. ECF No. 19 at 11, 14.

The Eleventh Amendment generally bars private parties, such as Sinclair, from suing a state in federal court. U.S. Const. amend. XI. That is true regardless of whether the plaintiff seeks monetary damages or equitable relief. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 58 (1996). Accordingly, the State of Minnesota is immune from suit under the Eleventh Amendment. *See Grover-Tsimi v. Minnesota*, 449 F. App'x 529, 530–31 (8th Cir. 2011). Arms of a state, like the Minnesota State Patrol, are also immune from suit under the Eleventh Amendment. *See Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010). And official-capacity claims for damages against state employees like Trooper Culbeaux are also barred by sovereign immunity. *See Logering v. Morrison Cnty. Sheriff's Dep't*, No. 23-cv-0177 (JWB/LIB), 2023 WL 3276515, at *6 (D. Minn. May 5, 2023) (citing *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997)). Eleventh Amendment sovereign

immunity therefore bars Sinclair's claims against these Defendants unless she demonstrates that one of two exceptions apply: (1) that Congress "authorize[d] such a suit"; or (2) that Defendants "waive[d] [their] sovereign immunity by consenting to suit." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999).

Beginning with Sinclair's Section 1983 claims, Congress has not abrogated Eleventh Amendment immunity for such claims, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1988), and the State of Minnesota has not consented to be sued under Section 1983, *see Hussein v. Minnesota*, No. 19-cv-1913 (DSD/TNL), 2019 WL 5693733, at *2 (D. Minn. Nov. 4, 2019) (collecting cases). And because the Eleventh Amendment "applies with equal force to pendent state law claims," Sinclair's state-law claims—which are based on the same conduct that underlies her Section 1983 claims—are also barred by sovereign immunity. *Cooper v. St. Cloud State Univ.*, 226 F.3d 964, 968 (8th Cir. 2000) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120–21 (1984)).

Sinclair's ADA claims against the State of Minnesota, the Minnesota State Patrol, and Trooper Culbeaux in his official capacity (to the extent damages are sought) are also barred by sovereign immunity. Those ADA claims revolve around the allegation that Trooper Culbeaux failed to offer a reasonable accommodation to Sinclair.[5] Title II of the

---

[5] The factual basis for Sinclair's ADA claim is unclear. The complaint only alleges that "Defendants failed to provide reasonable accommodations despite clear notice of Plaintiff's physical and mental disabilities," ECF No. 1 at 2, and Sinclair's responsive brief only states that Trooper Culbeaux disregarded her disabilities by using excessive force, ECF No. 26 at 3. Defendants understand Sinclair's ADA claim to revolve around the use of handcuffs on Sinclair. ECF No. 19 at 19–20. But Sinclair's complaint contains no allegation that she was handcuffed at all. Regardless, even assuming that Sinclair had

7

ADA abrogates a state's sovereign immunity in two scenarios: (1) when the defendant's conduct "implicate[s] the accessibility of judicial services," *Klingler v. Dir., Dep't of Rev., Mo.*, 455 U.S. 509, 531, 533–34 (2004)); and (2) when the defendant's conduct is unconstitutional, *id.* (citing *United States v. Georgia*, 546 U.S. 151, 159 (2006)).  Neither scenario applies here: an ADA claim related to the tight handcuffs do not relate to Sinclair's ability to access judicial services, and as discussed below, Sinclair has not plausibly alleged that the use of handcuffs by Trooper Culbeaux was unconstitutional.  And although Title II may still abrogate a state's sovereign immunity if "the abrogation of immunity is congruent and proportionate to the specific harm at issue," *Hall v. Minn. Bd. of Physical Therapy*, No. 23-cv-0665 (WMW/LIB), 2023 WL 8934307, at *4 (D. Minn. Dec. 27, 2023), Sinclair does not argue that this test is satisfied.  The ADA claim is barred by sovereign immunity.

Accordingly, all claims against the State of Minnesota, the Minnesota State Patrol, and Trooper Culbeaux in his official capacity (to the extent damages are sought) are dismissed.

## II. Sinclair Fails To Plausibly Allege Entitlement to Prospective Injunctive and Declaratory Relief

Liberally construed, Sinclair's complaint seeks injunctive and declaratory relief against Trooper Culbeaux in his official capacity.[6]  Sinclair's request for injunctive relief

---

adequately alleged that her ADA claim was based on Trooper Culbeaux's use of handcuffs, that claim is subject to dismissal for the additional reasons stated.

[6]   To the extent that Sinclair seeks injunctive relief against Trooper Culbeaux in his individual capacity, Sinclair cannot bring such a claim because Trooper Culbeaux "do[es] not have authority in [his] individual capacit[y]" to provide the requested injunctive relief.

falls under the *Ex parte Young* doctrine, which permits a plaintiff to bring a claim for injunctive relief against a state officer in their official capacity without infringing on the state's sovereign immunity. *See McDaniel v. Precythe*, 897 F.3d 946, 951–52 (8th Cir. 2018) (applying *Ex parte Young* in a Section 1983 suit); *Randolph v. Rodgers*, 253 F.3d 342, 348 (8th Cir. 2001) (applying *Ex parte Young* in an ADA Title II suit). However, the injunctive relief sought must be "prospective," and a court should evaluate a complaint to determine whether it "alleges an ongoing violation of federal law." *McDaniel*, 897 F.3d at 952 (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). The *Ex parte Young* doctrine does not apply in cases where "federal law has been violated at one time or over a period of time in the past." *Smith v. Reynolds*, 139 F.4th 631, 635 (8th Cir. 2025) (quoting *Papasan v. Allain*, 478 U.S. 265, 277–78 (1986)). Similarly, a request for declaratory relief must seek "prospective" relief, not "retrospective" relief as to the legality of past acts. *Just. Network, Inc. v. Craighead County*, 931 F.3d 753, 764 (8th Cir. 2019).

Here, Sinclair fails to plausibly allege entitlement to such forward-looking, prospective relief—either in the form of injunctive or declaratory relief—because Sinclair does not allege that there is any ongoing violation of federal law to cure. Rather, all of the injuries she alleges—excessive force and separation from her grandson—arise from a "one-time past act": her arrest on November 1, 2024. *Smith*, 139 F.4th at 635. Those allegations

---

*Hummel v. Minn. Dep't of Agric.*, 430 F. Supp. 3d 581, 593 & n.5 (D. Minn. 2020) (emphasis omitted) (collecting cases holding that Section 1983 plaintiffs may not sue state officials in their individual capacity for injunctive relief).

of past wrongdoing do not plausibly allege entitlement to prospective injunctive relief under *Ex parte Young*. *See id.* Nor do those allegations seek to "define the legal rights and obligations of the parties in anticipation of *some future conduct*," as is required to seek declaratory relief. *Just. Network*, 931 F.3d at 764 (emphasis added) (citation omitted). Sinclair's requests for injunctive and declaratory relief are therefore dismissed.

### III.  Sinclair Fails To Plausibly Allege a Section 1983 Claim for Damages Against Trooper Culbeaux in His Individual Capacity

Sinclair premises her individual-capacity Section 1983 claim against Trooper Culbeaux on two theories: (1) a violation of the Fourth Amendment for "Excessive Force and Unlawful Seizure," and (2) a violation of the Due Process Clause of the Fourteenth Amendment for separating Sinclair from her grandson. ECF No. 1 at 2. Neither theory plausibly alleges a Section 1983 claim.

#### a.   Fourth Amendment Violation

Sinclair alleges that Trooper Culbeaux engaged in "Excessive Force and Unlawful Seizure," in violation of the Fourth Amendment. ECF No. 1 at 2. As an initial matter, it is not entirely clear what "force" Sinclair claims was excessive, but based on her allegations and Defendants' arguments for dismissal, the Court understands two possible theories of excessive force: (1) Trooper Culbeaux's decision to pursue Sinclair's vehicle and execute a PIT maneuver; and (2) Trooper Culbeaux's use of handcuffs on Sinclair. ECF No. 1 at 1–2; ECF No. 25-1 at 1–2; *see* ECF No. 19 at 16–19 (Defendants construing Sinclair's excessive-force claim to challenge the PIT maneuver); ECF No. 26 at 6 (Sinclair arguing

that "using handcuffs . . . may be a violation of 4th Amend"); ECF No. 28 at 2 (Defendants responding to Sinclair's argument that the use of handcuffs constituted excessive force).[7]

### i.  Use of PIT Maneuver

Trooper Culbeaux asserts that he is entitled to qualified immunity on Sinclair's claim that his use of a PIT maneuver constituted excessive force. ECF No. 19 at 16. "Under the doctrine of qualified immunity, a court must dismiss a complaint against a government official in his individual capacity that fails to state a claim for violation of 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity analysis requires a two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Nord v. Walsh County*, 757 F.3d 734, 738 (8th Cir. 2014) (citation omitted) (internal quotation marks omitted). Unless both questions are answered affirmatively, qualified immunity applies. *Id.*

For a right to be clearly established, its contours must be "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Kisela v. Hughes*, 584 U.S. 100, 105 (2018) (citation omitted). Relevant to Sinclair's claim, it is clearly established that the "use of force is contrary to the Fourth

---

[7] Again, the Court does not believe that Sinclair has adequately alleged any claims resulting from the use of handcuffs, given that she did not allege in her complaint that she was handcuffed. Nonetheless, in the interest of completeness, the Court will address the merits of Sinclair's excessive-force claim based on Trooper Culbeaux's use of handcuffs.

11

Amendment if it is excessive under objective standards of reasonableness." *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001). But that is not enough. Rather, Sinclair must show that the right allegedly violated was clearly established in a "more particularized" way, such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202 (citations omitted).

Here, it was not clearly established that Trooper Culbeaux's PIT maneuver violated Sinclair's Fourth Amendment right to be free from excessive force. This case bears striking parallels to the Eighth Circuit's decision in *Moore-Jones v. Quick*, 909 F.3d 983 (8th Cir. 2018). In that case, a driver committed a traffic violation by driving with expired registration. *Id.* at 984. An officer began a traffic stop and turned on his emergency lights, followed by his siren eight seconds later, and his spotlight three seconds after that. *Id.* at 985. The driver initially pulled to the side of the road but then pulled back onto the road and started accelerating. *Id.* Fifty-one seconds after turning on his emergency lights, the officer executed a PIT maneuver, which caused the vehicle to spin and hit a cement culvert. *Id.* The driver then sued the officer for excessive force.

The Eighth Circuit held that the officer was entitled to qualified immunity, explaining that the "right to be free from a PIT maneuver in these circumstances was not sufficiently definite." *Id.* The Eighth Circuit explained that under governing law, a reasonable officer was "justified in using some force to secure compliance" when the driver "refused to comply with commands to pull over." *Id.* at 986. The Eighth Circuit also highlighted that the officer hit the driver's vehicle on the passenger side, which "avoid[ed]

12

the dangers to her and other drivers from her car potentially spinning into the parallel interstate." *Id.* at 986.

The same can be said here. Trooper Culbeaux engaged his emergency lights to stop Sinclair's vehicle for speeding, yet she continued driving for another two minutes—a minute longer than the driver in *Moore-Jones*. Sealed Ex. B at 1:55–3:50. Trooper Culbeaux was therefore "justified in using some force to secure compliance" when Sinclair "refused to comply with commands to pull over." *Moore-Jones*, 909 F.3d at 986. That conclusion is solidified by Trooper Culbeaux's care in executing the PIT maneuver by bumping Sinclair's vehicle on the passenger side on an exit ramp with little traffic. Sealed Ex. B at 3:50–3:57; *see Moore-Jones*, 909 F.3d at 986.

In an exhibit filed in opposition to Defendants' motion, Sinclair argues that she was not actually fleeing from Trooper Culbeaux but that she was trying to find a safer location to stop. ECF No. 25-1 at 1. This allegation is not contained in the complaint, so the Court need not consider it now. *See Perkins v. City of Minneapolis*, No. 23-cv-3810 (LMP/ECW), 2025 WL 331858, at *5 n.6 (D. Minn. Jan. 29, 2025) (explaining that a pro se litigant cannot amend their complaint through an opposition brief to a dispositive motion). But even if the Court considered that allegation, it would not change the analysis. As the Eighth Circuit has explained, "[l]aw enforcement officers are not required to read a suspect's motivations in failing to obey commands—it is enough that the officer reasonably perceives that the suspect is not following orders as given." *Neal v. Ficcadenti*, 895 F.3d 576, 581 (8th Cir. 2018). Although Sinclair may not have subjectively intended to disobey Trooper Culbeaux's order to pull over, it is sufficient that Trooper Culbeaux reasonably

13

perceived Sinclair to disobey his order by continuing to drive for two minutes after he activated his emergency lights. In these circumstances, the "right to be free from a PIT maneuver" was not "sufficiently definite," and Trooper Culbeaux is entitled to qualified immunity on this excessive-force claim. *Moore-Jones*, 909 F.3d at 985.

### ii.    Use of Handcuffs

Naturally, handcuffing a person requires some force, and "almost inevitably will result in some irritation, minor injury, or discomfort where the handcuffs are applied." *Chambers v. Pennycook*, 641 F.3d 898, 907 (8th Cir. 2011). Accordingly, to prove that the force applied in handcuffing a person was excessive, "a plaintiff must demonstrate something more." *Id.* In determining whether Sinclair has plausibly alleged "something more," the Court must evaluate whether the force used to handcuff her was reasonable, while recognizing that a "de minimis use of force is insufficient" to support an excessive-force claim. *Id.* (citation omitted) (emphasis omitted). And "[w]hile a *de minimis* injury does not preclude a claim of excessive force, the nature of any injuries suffered may still inform [the Court's] understanding of the force used." *Robinson v. Hawkins*, 937 F.3d 1128, 1136 (8th Cir. 2019).

As the Court has explained, Sinclair does not allege in her complaint that she was ever handcuffed, so she fails to plausibly allege that the force of handcuffs was even applied to her. Nor does Sinclair factually allege that she was injured at all during her arrest, which suggests to the Court that the force used was minimal. *See id.* Because she fails to allege any force or injury resulting from the use of handcuffs, Sinclair's claim of excessive force based on the use of handcuffs (to the extent such a claim was ever alleged) is dismissed.

14

*See Chambers*, 641 F.3d at 907 (explaining that "something more" than the "de minimus use of force" must be alleged).

      **b.**      **Due Process Violation**

Sinclair next alleges that Trooper Culbeaux violated her due process "parental interest and right to family integrity," ostensibly by separating Sinclair from her grandchild during her arrest. ECF No. 1 at 2. Several fatal flaws arise with Sinclair's claim.

It is true that parents have a substantive due process right "to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000). But Sinclair is the child's *grandparent*, not parent. ECF No. 1 at 2. Courts have generally rejected substantive due process claims of family integrity by grandparents. *See, e.g.*, *Miller v. California*, 355 F.3d 1172, 1175 (9th Cir. 2004); *Connor v. Deckinga*, No. 4:10-cv-855-Y, 2013 WL 991251, at *8 (N.D. Tex. Mar. 14, 2013) (collecting cases); *cf. Whisman ex rel. Whisman v. Rinehart*, 119 F.3d 1303, 1312 (8th Cir. 1997) (stating in dicta that if "grandchildren are in their parents' custody," grandparents likely do not have a substantive due process right in the custody of their grandchildren). Although some courts have held that grandparents who live with or have custody of their grandchildren may have a due process right to family integrity, *see Watterson v. Page*, 987 F.2d 1, 8 n.6 (1st Cir. 1993); *Osborne v. County of Riverside*, 385 F. Supp. 2d 1048, 1054 (C.D. Cal. 2005), Sinclair does not allege that she has custody of, or lives with, her grandchild. She therefore lacks a substantive due process right in the custody of her grandchild.

Even if Sinclair had a substantive due process right to custody of her grandchild, she falls far short of plausibly alleging a violation of that right. The right to family integrity

15

is "not absolute." *Manzano v. S.D. Dep't of Soc. Servs.*, 60 F.3d 505, 510 (8th Cir. 1995). "[T]he liberty interest in familial relations is limited by the compelling governmental interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves." *Myers v. Morris*, 810 F.2d 1437, 1462 (8th Cir. 1987). Here, the body cam footage reveals that Sinclair's grandson was separated from her for approximately 29 minutes, until the child's mother arrived to pick him up. *See* Sealed Ex. A at 4:07; Sealed Ex. C at 30:40. That separation was "considered necessary" due to Sinclair's arrest and inability to care for her grandson in that moment. *Myers*, 810 F.2d at 1462. Further, during those 29 minutes, State Patrol troopers and medics looked after the child and communicated with his mother. Sealed Ex. A at 28:17–29:00; Sealed Ex. C at 14:43–18:30, 23:37–25:58, 26:57–28:58. Sinclair provides no authority that a brief separation from a child during a traffic stop implicates a parent's—let alone a grandparent's—due process rights. Indeed, the allegations here pale in comparison to cases in which the Eighth Circuit has rejected claims that state authorities have violated a parent's right to family integrity. *See Thomason v. SCAN Volunteer Servs., Inc.*, 85 F.3d 1365, 1369, 1372 (8th Cir. 1996) (finding no due process violation when child was removed from parents' custody for two weeks to investigate child abuse allegations); *Mitchell v. Dakota Cnty. Soc. Servs.*, 959 F.3d 887, 895–96, 901 (8th Cir. 2020) (finding no due process violation when children were removed from father's custody for nearly two years to investigate child abuse allegations). Sinclair has therefore failed to plausibly allege a violation of a due process right to family integrity.

## IV. Sinclair Cannot Bring an ADA Claim Against Trooper Culbeaux in His Individual Capacity

The only remaining ADA claim is a Title II claim for damages against Trooper Culbeaux in his individual capacity.[8] But Sinclair cannot bring a Title II ADA claim against a public employee in his individual capacity. *See Dinkins v. Corr. Med. Servs.*, 743 F.3d 633, 634 (8th Cir. 2014) (per curiam) (citing *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc)). That is because Title II provides disabled individuals redress for discrimination by a "public entity," but "[t]hat term, as it is defined within the statute, does not include individuals." *Alsbrook*, 184 F.3d at 1005 n.8. Sinclair's ADA claim for damages against Trooper Culbeaux in his individual capacity is therefore dismissed.

## V. The Court Declines To Exercise Jurisdiction Over Sinclair's Remaining State-Law Claims

What remains are three state-law claims for damages against Trooper Culbeaux in his individual capacity: battery, negligence, and intentional infliction of emotional distress. ECF No. 1 at 2. A district court "may decline to exercise supplemental jurisdiction" over a state-law claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In the usual case in which "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent

---

[8] As a refresher, the ADA claims against the State of Minnesota, the Minnesota State Patrol, and Trooper Culbeaux in his official capacity for damages are barred by sovereign immunity. The ADA claim against Trooper Culbeaux in his official capacity for injunctive relief is unavailable under *Ex parte Young* because Sinclair does not seek prospective relief. And Sinclair cannot, as a matter of law, seek injunctive relief against Trooper Culbeaux in his individual capacity.

jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Barstad v. Murray County*, 420 F.3d 880, 888 (8th Cir. 2005) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

Here, the Court dismisses all federal-law claims well before trial, so the Court dismisses the state-law claims without prejudice "so that [they] may be considered, if at all, by the courts of Minnesota." *Hervey v. County of Koochiching*, 527 F.3d 711, 726 (8th Cir. 2008).

A few final housekeeping matters. On October 8, 2025, Sinclair filed an application to proceed in district court without prepaying fees or costs ("IFP Application"). ECF No. 30. Sinclair already filed an IFP Application when she first initiated this case, ECF No. 2, which was granted on June 9, 2025, by United States Magistrate Judge Elizabeth Cowan Wright, ECF No. 4. Sinclair's second IFP Application is therefore denied as moot. Also on October 8, 2025, Sinclair filed a motion for postconviction relief, raising issues with Sinclair's criminal prosecution in state court. ECF No. 31. This Court has no jurisdiction over Sinclair's state criminal case, so the Court denies her motion.[9]

## **CONCLUSION**

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

---

[9] Based on the legal citations contained in Sinclair's motion and the caption of the motion listing the Ramsey County District Court, it is possible that Sinclair meant to file this motion in state court. *See* ECF No. 31 at 1.

1. Defendants' Motion to Dismiss (ECF No. 17) is **GRANTED**;

2. Sinclair's second IFP Application (ECF No. 30) is **DENIED** as moot;

3. Sinclair's Motion for Postconviction Relief (ECF No. 31) is **DENIED**; and

4. The complaint (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 10, 2025              *s/Laura M. Provinzino*
                                     Laura M. Provinzino
                                     United States District Judge